RODGER R. COLE (CSB No. 178865)
rcole@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041
Telephone:     650.988.8500
Facsimile:      650.938.5200

ANNASARA G. PURCELL (CSB No. 295512)
apurcell@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA  98101
Telephone:     206.389.4510
Facsimile:      206.389.4511

Attorneys for Defendant, Intuit Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KIN WAH KUNG,<br><br>              Plaintiff,<br><br>       v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et al.,<br><br>              Defendants. | Case No.: 3:18-cv-00452-WHA<br><br>**DEFENDANT INTUIT INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  April 26, 2018<br>Time: 8:30 a.m.<br>Courtroom:  12 – 19th Floor<br>Judge: William H. Alsup<br><br>Trial Date:  None Set Yet<br>Date Action Filed: January 19, 2018 |

FENWICK & WEST LLP
ATTORNEYS AT LAW

INTUIT'S MOTION TO COMPEL
ARBITRATION

Case No.: 3:18-cv-00452-WHA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fenwick & West LLP
Attorneys at Law
Mountain View

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION ................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION .................................................................................... 1

II.     BACKGROUND ...................................................................................... 2

    A.   Intuit and Its Services ..................................................................... 2

    B.   Plaintiff Kin Wah Kung ................................................................... 3

    C.   The Intuit Merchant Agreement ........................................................ 4

III.    ARGUMENT ......................................................................................... 6

    A.   Plaintiff Assented to the Binding Arbitration Provision. ........................ 6

    B.   The Arbitration Agreement is Valid and Enforceable. ........................... 8

    C.   The Present Dispute is Within the Scope of the Arbitration Provision. ... 10

        1.   Threshold Issues of Arbitrability Should be Determined by the Arbitrator. ........................................................................ 10

        2.   This Dispute Arises Out of or Relates to the Merchant Agreement and Mr. Kung's Use of Intuit's Services. ................. 11

        3.   The Binding Arbitration Provision Expressly Survived the Termination of Mr. Kung's Merchant Account. ......................... 13

    D.   The Court Should Stay Proceedings in Favor of Arbitration. .................. 14

IV.     CONCLUSION ..................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambler v. BT Americas Inc.*,
964 F. Supp. 2d 1169 (N.D. Cal. 2013) ................................................................. 14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................................... 8

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ............................................................................................... 8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ................................................................................. 10

*Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*,
No. 5:13-CV-02559-EJD, 2014 WL 116442 (N.D. Cal. Jan. 13, 2014) .................... 9

*Cal. Grocers Ass'n, Inc. v. Bank of Am.*,
22 Cal. App. 4th 205 (1994) ....................................................................................... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .............................................................................. 6, 12

*Crawford v. Beachbody, LLC*,
No. 14CV1583-GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ............. 6, 7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ..................................................................................................... 6

*Diaz v. Intuit, Inc.*,
No. 5:15-CV-01778-EJD, 2017 WL 4355075 (N.D. Cal. Sept. 29, 2017) ...... 7, 10, 11

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ..................................................................................................... 6

*Galen v. Redfin Corp.*,
No. 14-CV-05229-TEH, 2015 WL 7734137 (N.D. Cal. Dec. 1, 2015) .................... 11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ..................................................................................................... 11

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ................................................................................... 9

*Inter-Mark USA, Inc. v. Intuit Inc.*,
No. C-07-04178 JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) .......................... 7

*Jones v. Deja Vu, Inc.*,
419 F. Supp. 2d 1146 (N.D. Cal. 2005) ................................................................... 13

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES (CON'T)**

**Page(s)**

*Khraibut v. Chahal*,
No. C15-04463 CRB, 2016 WL 1070662 (N.D. Cal. Mar. 18, 2016) ....................................11

*Kin Wah Kung v. Brown*,
No. 12-cv-00645 YGR, 2013 U.S. Dist. Lexis 168330 (N.D. Cal. Nov. 26, 2013) ....................................................................................................................4

*Kin Wah Kung v. Citibank, N.A.*,
No. C 16 03813 WHA, 2016 U.S. Dist. Lexis 137076 (N.D. Cal. Oct. 3, 2016) ......................4

*KPMG LLP v. Cocchi*,
132 S. Ct. 23 (2011) ..............................................................................8

*Levin v. Caviar, Inc.*,
No. 15-CV-01285-EDL, 2016 WL 270619 (N.D. Cal. Jan. 22, 2016) ....................................11

*Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*,
501 U.S. 190 (1991) ..............................................................................13

*Mance v. Mercedez-Benz USA*,
901 F. Supp. 2d 1147 (N.D. Cal. 2012) ..............................................................8

*Mortensen v. Bresnan Commc'ns LLC*,
722 F.3d 1151 (9th Cir. 2013) ..........................................................................8

*Moule v. United Parcel Serv. Co.*,
No. 1:16-CV-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ....................................7

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..........................................................................7

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
724 F.3d 1069 (9th Cir. 2013) ..........................................................................11

*Qualcomm Inc. v. Nokia Corp.*,
466 F.3d 1366 (Fed. Cir. 2006) ................................................................10, 11

*Rassoli v. Intuit Inc.*,
No. H-11-2827, 2012 WL 949400 (S.D. Tex. Mar. 19, 2012) ..........................................7

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ..............................................................................10

*Selden v. Airbnb, Inc.*,
No. 16-CV-00933 (CRC), 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ....................................7

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) ..........................................................................12

*Spokeo v. Robins*,
136 S.Ct. 1540 (2016) ..............................................................................4

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES (CON'T)**

**Page(s)**

*Starke v. Gilt Groupe, Inc.*,
No. 13 CIV. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...................................7

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ...................................................................................7

*ValueSelling Assocs., LLC v. Temple*,
No. 09-CV-1493 JM, 2009 WL 3736264 (S.D. Cal. Nov. 5, 2009)........................................12

**STATUTES**

Fair Credit Reporting Act, 15 U.S.C. § 1681 ...............................................................................1, 3

Federal Arbitration Act, 9 U.S.C. §§ 1-14 ....................................................................... *passim*

**RULES**

American Arbitration Association, Rule 14...................................................................................10

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 26, 2018 at 8:30 a.m. in Courtroom 12, the Honorable William Alsup presiding, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, Defendant Intuit Inc. ("Intuit") will move for an order compelling the arbitration of Plaintiff's claims and staying this action pending the outcome of binding arbitration. Intuit makes this Motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and upon the grounds that the governing Merchant Agreement requires Plaintiff to arbitrate all claims relating to Mr. Kung's agreements with Intuit or his use of Intuit's services.

This motion is based on this Notice of Motion and Motion, Intuit's Memorandum of Points and Authorities, the Declaration of Sandra Gebbia in support of Intuit's Motion ("Gebbia Decl.") and all exhibits thereto, all documents in the Court's file, and on such other arguments as may be presented to the Court, and any other matters that the Court may properly consider in connection with this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Through this action, Plaintiff Kin Wah Kung ("Mr. Kung") alleges that Intuit violated the Fair Credit Reporting Act ("FRCA") by allegedly requesting credit information from Experian shortly after Mr. Kung stopped utilizing Intuit's payment processing services. Because the applicable Merchant Agreement requires arbitration of all disputes relating to Mr. Kung's use of Intuit's services or his agreements with Intuit, and because this dispute falls squarely within the scope of that arbitration provision, Intuit asks this Court to compel Mr. Kung's claims to arbitration and stay proceedings pending the outcome of binding arbitration.

First, there is no question that Mr. Kung agreed to arbitrate all disputes relating to his use of Intuit's services. When he applied for and used Intuit's payments services product, Mr. Kung agreed to be bound by Intuit's Merchant Agreement, which includes the arbitration provision at issue. Settled Ninth Circuit law establishes that "modified clickwrap" agreements like the one utilized by Mr. Kung—wherein a user is told that clicking a particular button constitutes

agreement to terms of service and proceeds to click that button—provide adequate evidence of assent and are enforceable.

Second, Intuit's arbitration provision is valid and enforceable.  Under Ninth Circuit law, agreements to arbitrate must be enforced unless they are both procedurally and substantively unconscionable.  The arbitration clause at issue here is neither, and routinely has been enforced by courts in this Circuit.

Finally, the dispute at issue here falls squarely within the scope of the arbitration provision.  As a threshold issue, because the arbitration provision incorporates by reference the rules of the American Arbitration Association (AAA)—which provide that the arbitrator is empowered to determine the limits of her own jurisdiction—Ninth Circuit law provides that all issues of arbitrability are to be determined by the arbitrator, rather than by the Court.

Even if the Court were to reach the question, however, Mr. Kung's claim falls within the scope of the provision.  Through this claim, Mr. Kung contends that it was unlawful for Intuit to allegedly have requested a credit report from Experian after he closed his payment processing account, but during a period in which he remained contractually obliged to meet certain financial criteria because Intuit could still incur liabilities from the recently-closed account.  This relates to Mr. Kung's use of Intuit's services, and the judicial determination Mr. Kung seeks in his lawsuit clearly requires an interpretation of the Merchant Agreement on this point.  As a result, this dispute is squarely within the scope of the arbitration agreement.

Finally, because the arbitration agreement expressly survives any termination of Mr. Kung's merchant account, the Court should reject any argument that Mr. Kung's obligation to arbitrate terminated when he closed his merchant account.

## II.    BACKGROUND

### A.    Intuit and Its Services

Intuit develops and offers various financial, payment processing, and tax preparation software and related services.  Intuit's popular offerings include the leading tax preparation software TurboTax, personal finance resource Mint, and finance-tracking software QuickBooks.  At issue in this case is Intuit's merchant services offering.  Through this platform merchants

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   enrolled with Intuit are able to access card association networks for the purpose of transacting

2   credit card payments from their customers. Intuit's merchant services are available only to

3   businesses; individual consumers cannot utilize the merchant services platform.

4       Because the merchant services platform provides users with the ability to process credit

5   card transactions, businesses seeking to use the platform must agree to a number of measures

6   ensuring that the business—and not Intuit—will be responsible for any fraudulent or errant credit

7   card charges. Businesses applying to use the service provide Intuit with consent to obtain credit

8   history information regarding both the business and the principal owner of the business from a

9   credit rating agency. *See* Declaration of Sandi Gebbia in Support of Intuit's Motion to Compel

10   Arbitration ("Gebbia Decl.") at ¶ 7, Ex. D. The business also agrees that for a period of no less

11   than 270 days after it closes its merchant account, it will maintain an appropriate amount of funds

12   in a reserve account to ensure that it has funds adequate to cover any credit card transactions that

13   are later determined to be fraudulent. *Id*. at ¶ 8, Ex. E. Finally, the principal owner of any

14   business applying for a merchant account must provide a personal guarantee as to all funds owed

15   by the business on account of its use of the platform. *Id*.

16       **B.**    **Plaintiff Kin Wah Kung**

17       Mr. Kung is a California resident who previously used Inuit's merchant services platform

18   for his businesses. Mr. Kung applied for a merchant account for one business in June of 2013,

19   and a second merchant account for a second business in October of 2013. Gebbia Decl. ¶ 4. Mr.

20   Kung utilized his merchant accounts for next few years. *See id.*; Complaint ¶ 9. In March of

21   2015, a dispute arose between Intuit and Mr. Kung regarding the processing of a few discrete

22   transactions through Mr. Kung's merchant accounts. Complaint ¶¶ 10-11. In connection with the

23   resolution of that dispute, Mr. Kung closed his accounts in May of 2015. *Id.*; Gebbia Decl. ¶ 6.

24       In the present action, Mr. Kung alleges that on January 26, 2016, Intuit requested Mr.

25   Kung's consumer report from Experian, Inc. Complaint ¶ 12. Mr. Kung alleges that Intuit did

26   not have either his consent or any legitimate business purpose for allegedly requesting his

27   consumer report at that time. *Id*. ¶ 13. On the basis of this alleged credit pull, Mr. Kung asserts

28   that Intuit and Experian willfully and negligently violated FCRA. *Id*. ¶¶ 21-27. Mr. Kung does

1    not allege that he experienced any actual damage as a result of Intuit's alleged request for his

2    consumer report.  *See generally* Complaint.[1]

3        **C.    The Intuit Merchant Agreement.**

4        When a business applies to use Intuit's merchant services platform, it must complete an

5    application providing a variety of information regarding the business, its principal owner, and its

6    payment processing needs.  Gebbia Decl. ¶ 4.  In the present case, Mr. Kung completed one

7    application online on June 18, 2013, and a second online application on October 17, 2013.  *Id.*

8        Before an applicant can actually submit their application online, they are required to agree

9    to Intuit's Terms and Conditions, which are also referred to as the "Merchant Agreement."

10   Gebbia Decl. ¶ 5.  In June of 2013, users submitting online applications were presented with

11   language that states "By continuing, I agree to the <u>Terms and Conditions</u>, including the <u>IPS</u>

12   <u>Electronic Communications Policy</u>."  *Id.*, Ex. C.  The words "<u>Terms and Conditions</u>" in that

13   sentence are a hyperlink.  *Id.*  This language is directly next to the "sign up" button that the

14   applicant must click to submit their application.  *Id.*  A portion of the webpage displaying this

15   language and hyperlink is shown here:



---

24   [1] As this Court has previously noted, Mr. Kung has "brought 20 to 30 other lawsuits" in state and
25   federal court.  *See Kin Wah Kung v. Citibank, N.A.*, No. C 16 03813 WHA, 2016 U.S. Dist. Lexis
     137076, at *2 (N.D. Cal. Oct. 3, 2016) (Alsup, W.).  A substantial number of these cases have
26   been dismissed on the ground that Mr. Kung did not sustain any injury as a result of the conduct
     alleged.  *See id.* (dismissing Truth in Lending Act claim for lack of Article III standing under
27   *Spokeo v. Robins, 136 S.Ct. 1540 (2016)*); *see also Kin Wah Kung v. Brown*, No. 12-cv-00645
     YGR, 2013 U.S. Dist. Lexis 168330, at *3-4 (N.D. Cal. Nov. 26, 2013) (dismissing claim for lack
28   of Article III standing).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    If a user clicks on the Terms and Conditions hyperlink, they are taken directly to the Terms and

2    Conditions governing use of the payment platform.  *Id.*

3              At all times that Mr. Kung maintained a merchant account, the Merchant Agreement

4    contained a substantively identical binding arbitration.  Gebbia Decl. ¶ 7-8.  On June 18, 2013,

5    when Mr. Kung first completed his merchant application, the disputes resolution section of the

6    Merchant Agreement provided as follows:

> **14**. **DISPUTES.** ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters. Notwithstanding anything to the contrary, any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction. WE EACH AGREE THAT ANY AND ALL DISPUTES MUST BE BROUGHT IN THE PARTIES' INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. BY ENTERING INTO THIS AGREEMENT AND AGREEING TO ARBITRATION, YOU AGREE THAT YOU AND INTUIT ARE EACH WAIVING THE RIGHT TO FILE A LAWSUIT AND THE RIGHT TO A TRIAL BY JURY. IN ADDITION, YOU AGREE TO WAIVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR LITIGATE ON A CLASS-WIDE BASIS. YOU AGREE THAT YOU HAVE EXPRESSLY AND KNOWINGLY WAIVED THESE RIGHTS.
>
> To begin an arbitration proceeding, send a letter requesting arbitration and describing your claim to Intuit Inc., in care of our registered agent Corporation Service Company, 2711 Centerville Road, Wilmington, DE 19808. Arbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules, which are available at www.adr.org or by calling 1-800-778-7879. Payment of all filing, administration and arbitrator fees and costs will be governed by the AAA's rules, but if you are unable to pay any of them, Intuit will pay them for you. In addition, Intuit will reimburse all such fees and costs for claims totaling less than $75,000 unless the arbitrator determines the claims are frivolous. Likewise, Intuit will not seek its attorneys' fees or costs in arbitration unless the arbitrator determines your claims or defenses are frivolous. You may choose to have the arbitration conducted by telephone, based on written submissions, or in person in the county where you live or at another mutually agreed location. The decision of the arbitrator shall be final and not appealable, and judgment on the arbitration award may be entered in any court having jurisdiction thereof. This Section 14 shall survive expiration, termination or recession [sic] of this Agreement.

24    Gebbia Decl., Ex. D at ¶ 14.  The 2015 Merchant Agreement, which was in place at the time that

25    Mr. Kung terminated his account, contains a substantively identical binding arbitration provision.

26    *See* Gebbia Decl., Ex. E.  Although the paragraph breaks are different in the 2015 version of the

27    agreement and the section number is different, that arbitration provision also provides that: (1) the

28    arbitration will be conducted according the AAA rules; (2) that Intuit will pay all arbitration fees

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

if the merchant cannot, and will reimburse all fees for claims less than $75,000; (3) that the

merchant can choose to conduct the arbitration in the country where they live, by telephone, or at

another mutually agreed location; and (5) that the arbitration provision shall survive expiration,

termination, or recession of the Merchant Agreement.  *Id*. at ¶ 46.  As in the 2013 Merchant

Agreement, the arbitration provision in the 2015 agreement applies to "any dispute or claim

relating in any way to the services or this agreement."  *Id.*

## III.    ARGUMENT

The FAA mandates that written agreements to arbitrate disputes "shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. "By its terms, the Act 'leaves no place for the exercise

of discretion by a district court, but instead mandates that district courts *shall* direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron*

*Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (emphasis in original)

(citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  Plaintiff here should be

compelled to arbitrate his claim against Intuit because he agreed to the binding arbitration

provision when applying for a merchant account and by continuing to use Intuit's merchant

services, the binding arbitration provision is valid and enforceable, and the arbitration provision

plainly encompasses the claim that Plaintiff asserts here.

### A.    Plaintiff Assented to the Binding Arbitration Provision.

In determining whether parties agreed to arbitrate, "courts . . . apply ordinary state-law

principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514

U.S. 938, 944 (1995).  In the context of online contract formation, the question of whether a

website user consented to terms of use "turns on whether the website puts a reasonably prudent

user on inquiry notice of the terms of the contract." *Crawford v. Beachbody, LLC*, No.

14CV1583-GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014).  Courts have

recognized a spectrum from "clickwrap" agreements—in which a user must manifest assent to

terms by clicking on a box acknowledging that they have read and accept the terms—to

"browsewrap" agreements, in which a website informs a user of the terms but does not require

any active manifestation of assent.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (comparing click wrap and browsewrap agreements).  Courts in the Ninth Circuit describe agreements like those at issue here—in which a user is told that by taking a specific action he is agreeing to hyperlinked terms—as "modified clickwrap" agreements, and routinely enforce such agreements.  *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011). ("Cases addressing modified clickwrap presentations more similar to the one at issue here, where a plaintiff was provided notice and an opportunity to review terms of service prior to acceptance, have held them sufficient to put a plaintiff on notice of the terms to which she was assenting."); *Crawford*, 2014 WL 6606563, at *3 (finding that plaintiff assented to terms by clicking "place order" button where language near button stated that placing order constituted agreement to hyperlinked terms of use); *Moule v. United Parcel Serv. Co.*, No. 1:16-CV-00102-JLT, 2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016) (finding that plaintiff agreed to arbitration provision in terms of use where website stated "by clicking the Yes button, you agree to the UPS Tariff/Terms and Conditions" and provided hyperlink to terms).  Courts outside of the Ninth Circuit also consistently enforce such agreements.  *See Selden v. Airbnb, Inc.*, No. 16-CV-00933 (CRC), 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016) (collecting cases); *Starke v. Gilt Groupe, Inc.*, No. 13 CIV. 5497(LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (enforcing arbitration clause, noting that plaintiff "was directed exactly where to click in order to review those terms, and his decision to click the 'Shop Now' button represents his assent to them").

In addition to the broad body of case law holding that modified clickwrap agreements generally are enforceable, courts around the country have also uniformly enforced Intuit's Terms of Use specifically as being valid and enforceable.  *See, e.g.*, *Diaz v. Intuit, Inc.*, No. 5:15-CV-01778-EJD, 2017 WL 4355075, at *2 (N.D. Cal. Sept. 29, 2017) (compelling arbitration based on Intuit Terms of Service); *Inter-Mark USA, Inc. v. Intuit Inc.*, No. C-07-04178 JCS, 2008 WL 552482, at *8-9 (N.D. Cal. Feb. 27, 2008) (enforcing Intuit merchant agreement); *Rassoli v. Intuit Inc.*, No. H-11-2827, 2012 WL 949400, at *2 (S.D. Tex. Mar. 19, 2012) (same).

Here the agreement Mr. Kung entered with Intuit is a modified clickwrap agreement that should be enforced under this precedent.  While completing the merchant application for his

1    business in June of 2013, Mr. Kung was presented with language—immediately next to the "sign

2    up" button—that read "By continuing, I agree to the Terms and Conditions, including the IPS

3    Electronic Communications Policy."  Gebbia Decl. ¶ 5, Ex. C.  The Terms and Conditions

4    language was hyperlinked, meaning that Mr. Kung could easily view the terms to which he was

5    agreeing.  *Id.*  By choosing to continue and submit his application in light of this disclosure, Mr.

6    Kung manifested his assent to the binding arbitration provision.

7                    **B.      The Arbitration Agreement is Valid and Enforceable.**

8            The Federal Arbitration Act (FAA) makes agreements to arbitrate "valid, irrevocable, and

9    enforceable, save upon such grounds as exist at law or in equity for the revocation of any

10   contract." 9 U.S.C. § 2. The Act reflects an "emphatic federal policy in favor of arbitral dispute

11   resolution." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (internal quotation

12   marks omitted). The Ninth Circuit has concluded that "the FAA's purpose is to give preference

13   (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns LLC*, 722

14   F.3d 1151, 1160 (9th Cir. 2013) (emphasis added).  Because arbitration is favored, "those parties

15   challenging the enforceability of an arbitration agreement bear the burden of proving that the

16   provision is unenforceable." *Id.* at 1157.  Under California law, an arbitration agreement can be

17   voided on grounds of unconscionability only if it is *both* procedurally and substantively

18   unconscionable.  *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016).  As Intuit's

19   arbitration provision is neither procedurally nor substantively unconscionable, there is no basis on

20   which it should not be enforced.

21           Turning first to procedural unconscionability, the fact that a contract is a contract of

22   adhesion is not sufficient to render it procedurally unconscionable.  *See AT&T Mobility LLC v.*

23   *Concepcion*, 563 U.S. 333 at 346-47 (2011) (enforcing arbitration provision in an adhesion

24   contract, noting "the times in which consumer contracts were anything other than adhesive are

25   long past."); *Cal. Grocers Ass'n, Inc. v. Bank of Am.*, 22 Cal. App. 4th 205, 214 (1994) (adhesive

26   contracts not "per se" oppressive); *Mance v. Mercedez-Benz USA,* 901 F. Supp. 2d 1147, 1162

27   (N.D. Cal. 2012) ("[W]hile the contract was adhesive, this fact, alone and after *Concepcion*, does

28   not render the arbitration provision procedurally unconscionable."). To the contrary, provided that

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   a user has a meaningful choice as to whether to use a particular platform, no procedural

2   unconscionability is present even in a contract of adhesion.  *See, e.g.*, *Brookdale Inn & Spa v.*

3   *Certain Underwriters at Lloyds, London*, No. 5:13-CV-02559-EJD, 2014 WL 116442, at *3

4   (N.D. Cal. Jan. 13, 2014) ("[T]here can be no oppression establishing procedural

5   unconscionability, even assuming unequal bargaining power and an adhesion contract, when the

6   customer has meaningful choices." (citation omitted)).

7        Here there is simply no evidence of procedural unconscionability. Plaintiff entered into

8   the merchant agreement not as an individual consumer but on behalf of his business.  There is no

9   reason to believe that Plaintiff's business could not have selected from among multiple payment

10  processing platforms or that it otherwise lacked choice as to whether to use Intuit's platform.

11  Moreover, the dispute resolution provision of the Merchant Agreement is set off from the other

12  provisions of the agreement through the use of all-caps writing calling attention to the fact that

13  merchants are agreeing to arbitrate their disputes.  Because there is no evidence that Plaintiff

14  lacked meaningful choice in agreeing to the arbitration provision or was caught unaware by its

15  inclusion in the agreement, it is not procedurally unconscionable.

16       The agreement is also not substantively unconscionable.  Under California law, an

17  agreement is unconscionable only if its "terms are so one-sided as to shock the conscience."

18  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003).  Here nothing about

19  Intuit's arbitration provision shocks the conscience; to the contrary, the provision includes a

20  number of provisions designed to ensure that arbitration is accessible and fair to consumers: Intuit

21  agrees to reimburse customers for all arbitration fees for claims under $75,000, and to pay those

22  fees up front if the customer is unable to do so.  Gebbia Decl. Ex. D at ¶ 14.  The

23  provision also allows the customer to decide whether they want to conduct the arbitration on the

24  papers, by phone, or in the county of their residence.  *Id*.  Intuit also agrees not to seek fees and

25  costs unless the arbitrator determines that a claim is frivolous.  *Id*. In light of these many

26  protections, there is no basis from which to conclude that the arbitration provision is substantively

27  unconscionable.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

### C.     The Present Dispute is Within the Scope of the Arbitration Provision.

Once the Court has determined that the parties entered a valid agreement to arbitrate, the only remaining question is whether the arbitration provision covers the dispute at issue.  The parties may agree, however, to have this threshold issue of arbitrability determined by the arbitrator.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). In cases where the parties agree to arbitrate arbitrability, a court's inquiry is limited to whether the assertion of arbitrability is "wholly groundless."  *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).  Arbitration should be compelled here because the parties have agreed that the arbitrator should resolve threshold issues of arbitrability, and because Intuit's argument that this dispute falls within the arbitration provision is not "wholly groundless."  To the contrary, this dispute falls squarely within the scope of the arbitration provision.  In addition, since the arbitration provision expressly survived the termination of Mr. Kung's merchant account, the arbitration provision remains binding on both parties regardless of the termination of Mr. Kung's account.

### 1.     Threshold Issues of Arbitrability Should be Determined by the Arbitrator.

Rule 14 of the American Arbitration Association (AAA) rules empowers the arbitrator to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See Diaz*, 2017 WL 4355075, at *3.  For that reason, in the case of *Brennan v. Opus Bank*, the Ninth Circuit squarely held that when an arbitration provision incorporates AAA rules, this constitutes clear and unmistakable evidence that the parties agreed to arbitrate the issue of arbitrability.  796 F.3d 1125, 1130 (9th Cir. 2015) ("Now that the question regarding incorporation of the AAA rules is squarely before us, we hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.").  The Ninth Circuit had previously observed that "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."

1    *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013).  Applying this

2    straightforward rule, numerous district courts within this district have delegated the issue of

3    arbitrability to the arbitrator based on a contract's incorporation of AAA rules.  *See e.g. Khraibut*

4    *v. Chahal,* No. C15-04463 CRB, 2016 WL 1070662, at *6 (N.D. Cal. Mar. 18, 2016) (finding

5    clear and unmistakable intent to delegate issue of arbitrability based on incorporation of AAA

6    rules); *Galen v. Redfin Corp.*, No. 14-CV-05229-TEH, 2015 WL 7734137, at *7 (N.D. Cal.

7    Dec. 1, 2015) (same); *Levin v. Caviar, Inc.*, No. 15-CV-01285-EDL, 2016 WL 270619, at *3

8    (N.D. Cal. Jan. 22, 2016) (same).

9        Here the arbitration provision plainly states that it will be conducted according to AAA

10   rules.  *See* Gebbia Decl., Ex. D at ¶ 14 ("Arbitration will be conducted by the American

11   Arbitration Association (AAA) before a single AAA arbitrator *under the AAA's rules*, which are

12   available at www.adr.org or by calling 1-800-778-7879.") (emphasis added).  Under the

13   authorities cited above, this constitutes clear and unmistakable evidence that the parties

14   delegated the issue of arbitrability to the arbitrator.  Indeed, another court in this district recently

15   concluded that because Intuit's arbitration provision incorporates AAA rules, all threshold issues

16   of arbitrability should be decided by the arbitrator. *See Diaz,* 2017 WL 4355075, at *3

17   ("Consistent with the authorities cited above, the Court finds that the reference to the AAA rules

18   constitutes clear and unmistakable evidence of the intent to arbitrate arbitrability.").

19   Accordingly, straightforward application of Ninth Circuit precedent requires that all issues of

20   arbitrability be delegated to the arbitrator.

21              **2.      This Dispute Arises Out of or Relates to the Merchant Agreement and**
                          **Mr. Kung's Use of Intuit's Services.**
22

23       Because the parties agreed to delegate all issues of arbitrability to the arbitrator, Mr.

24   Kung's claim must be compelled to arbitration unless the argument that it falls within the scope

25   of the provision is "wholly groundless."  *Qualcomm*, 466 F.3d at 1371.  Moreover the burden is

26   on Mr. Kung, as the party resisting arbitration, to demonstrate that his claim does not fall within

27   the scope of the provision.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92

28   (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   unsuitable for arbitration.").  Here Mr. Kung cannot carry his burden of showing that his claim is

2   not covered by the arbitration provision, let alone establishing that Intuit's position is wholly

3   groundless.

4          Through the arbitration provision Mr. Kung agreed to arbitrate "any dispute or claim

5   *relating in any way* to the services or this agreement."  Gebbia Decl., Ex. D at ¶ 14 (emphasis

6   added).  Courts treat this "relating in any way" language as being paradigmatically broad.

7   *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (describing

8   provision encompassing claims "arising out of or relating to" agreement as "broad and far

9   reaching"); *ValueSelling Assocs., LLC v. Temple*, No. 09-CV-1493 JM, 2009 WL 3736264, at *2

10  (S.D. Cal. Nov. 5, 2009) ("A clause providing for the arbitration of 'any claim or controversy

11  arising out of or relating to the agreement' has been held to be the paradigm of a broad clause.").

12  The Ninth Circuit has concluded that where such broad language is used, the dispute "need only

13  'touch matters' covered by the contract containing the arbitration clause and all doubts are to be

14  resolved in favor of arbitrability."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir.

15  1999).

16         Here there can be no real question that the present dispute "touches matters" covered by

17  the Merchant Agreement and Mr. Kung's use of Intuit's services.  In the Merchant Agreement,

18  Mr. Kung provided his consent for Intuit to utilize credit bureaus or reporting agencies to

19  monitor his creditworthiness.  Gebbia Decl., Ex. D at ¶ 7; Ex. E at ¶ 4. The issue raised by Mr.

20  Kung's complaint is whether that consent terminated as soon as Mr. Kung terminated his

21  merchant account, or remained valid while Mr. Kung had ongoing financial obligations to Intuit

22  on the basis of that account after its termination.  This is a question of interpretation of the

23  Merchant Agreement, and as such, plainly relates to that agreement.[2]  Moreover, Mr. Kung

24  cannot reasonably dispute that this arose due to his use of Intuit's services, again rendering the

25  dispute within the scope of the provision.

26

27  _____

    [2] It bears noting that the Merchant Agreement's provision of consent for Intuit to seek credit
28  information regarding merchants is open ended and does not contain any temporal limitation.
    Gebbia Decl., Ex. D at 5; Ex. E at ¶ 4.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    In short, Mr. Kung cannot carry his burden of showing that this dispute does not fall

2    within the arbitration provision, let alone showing that it is "wholly groundless" to suggest that it

3    does.  As such, this claim must be compelled to arbitration.

4              **3.      The Binding Arbitration Provision Expressly Survived the
                         Termination of Mr. Kung's Merchant Account.**

5         To the extent that Mr. Kung argues that his obligation to arbitrate terminated with his

6    merchant accounts, any such argument is refuted by both the case law and the terms of the

7    Merchant Agreement itself.  The Supreme Court has concluded that in the absence of an express

8    temporal limitation on an arbitration provision, the provision is assumed to survive the

9    termination of a contract.  *See Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v.*

10   *N.L.R.B.*, 501 U.S. 190, 204 (1991) (noting a "presumption in favor of postexpiration arbitration

11   of matters unless 'negated expressly or by clear implication' [for] … matters and disputes arising

12   out of the relation governed by contract").  While the Ninth Circuit has not expressly addressed

13   this question in any published opinions, other courts within this district have noted that "a party's

14   contractual duty to arbitrate disputes may survive termination of the agreement giving rise to that

15   duty."  *Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005).

16        Here, however, Intuit need not rely on a presumption in favor of the arbitration provision

17   surviving as the Merchant Agreement itself makes clear that it does.  The 2013 version of the

18   Merchant Agreement to which Mr. Kung originally agreed provides that "Sections 2.2, 3 through

19   15 will survive and remain in effect even if the Agreement is terminated."  Gebbia Decl., Ex. D at

20   ¶ 11.  Because the arbitration provision is contained in Section 14 of that Agreement, it is

21   expressly covered by this clause.  Moreover, the binding arbitration provision itself provides that

22   "[t]his Section 14 shall survive expiration, termination, or recession [sic] of this Agreement."  *Id*.

23   ¶ 14.  Thus the Agreement states twice that the arbitration provision survives termination of the

24   Merchant Agreement.  Similarly the 2015 Merchant Agreement in place when Mr. Kung

25   terminated his account provided that "This Section 41 shall survive expiration, termination, or

26   recession [sic] of this agreement."  Gebbia Decl., Ex. E at ¶ 46.  Thus both Merchant Agreements

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   are clear that the binding arbitration provision will continue to govern disputes relating to the

2   Agreement or the use of the services even after a user's merchant account is closed.

3       **D.     The Court Should Stay Proceedings in Favor of Arbitration.**

4           Under the FAA, a court must stay proceedings if it is satisfied that an issue before it is

5   referable to arbitration under an agreement. 9 U.S.C. § 3; *Ambler v. BT Americas Inc.*, 964 F.

6   Supp. 2d 1169, 1178 (N.D. Cal. 2013).  Accordingly, Intuit asks that the Court stay all

7   proceedings in favor of binding arbitration.

8                   **IV.     CONCLUSION**

9           Intuit respectfully requests that the Court grant its motion to compel arbitration and stay

10  proceedings pending the resolution of Mr. Kung's claims in arbitration.

11

12  Dated:   March 15, 2018                    FENWICK & WEST LLP

13

14                                      By:  */s/ /Annasara G. Purcell*
                                            Rodger R. Cole (CSB No. 178865)
15                                          Annasara G. Purcell (CSB No. 295512)
                                            FENWICK & WEST LLP
16
                                            Attorneys for Defendant, Intuit Inc.
17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

INTUIT'S MOTION TO COMPEL
ARBITRATION                     14              Case No.: 3:18-cv-00452-WHA