1  RODGER R. COLE (CSB No. 178865)
   rcole@fenwick.com
2  FENWICK & WEST LLP
   Silicon Valley Center
3  801 California Street
   Mountain View, CA 94041
4  Telephone:    650.988.8500
   Facsimile:    650.938.5200
5
   ANNASARA G. PURCELL (CSB No. 295512)
6  apurcell@fenwick.com
   FENWICK & WEST LLP
7  1191 Second Avenue, 10th Floor
   Seattle, WA 98101
8  Telephone:    206.389.4510
   Facsimile:    206.389.4511
9
   Attorneys for Defendant, Intuit Inc.

10

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15 | KIN WAH KUNG,                          Case No.: 3:18-cv-00452-WHA

16 |            Plaintiff,                   **REPLY BRIEF IN SUPPORT OF
                                             DEFENDANT INTUIT INC.'S
17 |       v.                                MOTION TO COMPEL
                                             ARBITRATION**
18 | EXPERIAN INFORMATION SOLUTIONS,
   | INC., et al.,                          Date: April 26, 2018
19 |                                         Time: 8:30 a.m.
   |            Defendants.                  Courtroom: 12 – 19th Floor
20 |                                         Judge: William H. Alsup

21                                           Trial Date: None Set Yet
                                             Date Action Filed: January 19, 2018
22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A. The Arbitration Provision Remains Binding and Enforceable. ............................ 2

        1. By its Terms, the Arbitration Provision Survived the Termination of Plaintiff's Merchant Account. ................................................................. 2

        2. The Arbitration Provision is Supported by Adequate Consideration.......... 3

        3. The Parties' Settlement Agreement Did Not Terminate the Agreement to Arbitrate. ................................................................................ 4

    B. Arbitration is Required Under Both State and Federal Law. ................................ 5

        1. The Parties Agreed that The Federal Arbitration Act Would Govern Application of the Arbitration Provision. ...................................... 6

        2. The Federal Arbitration Act Also Governs this Dispute Because the Contract at Issue Involves Commerce............................................. 6

        3. In All Events, The California Arbitration Act Likewise Would Require Arbitration of Plaintiff's Claim.................................................. 8

III. CONCLUSION ......................................................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Allied-Bruce Terminix Companies, Inc. v. Dobson,*
    513 U.S. 265 (1995)..................................................................................................................7

*Andersen v. Charles,*
    52 Cal. App. 290 (Ct. App. 1921)............................................................................................3

*Botefur v. City of Eagle Point, Or.,*
    7 F.3d 152 (9th Cir. 1993)........................................................................................................2

*C. V. Starr & Co. v. Boston Reinsurance Corp.,*
    190 Cal. App. 3d 1637 (Ct. App. 1987)...................................................................................9

*Citizens Bank v. Alafabco, Inc.,*
    539 U.S. 52 (2003)...................................................................................................................7

*Gloster v. Sonic Auto., Inc.,*
    226 Cal. App. 4th 438 (Ct. App. 2014)....................................................................................6

*Golden v. Dameron Hosp. Ass'n,*
    No. CIV. S-12-0751-LKK/EFB, 2012 WL 4208779 (E.D. Cal. Sept. 19 2012) .......................7

*Jones v. Deja Vu, Inc.,*
    419 F. Supp. 2d 1146 (N.D. Cal. 2005) ..................................................................................3

*Lopez v. Charles Schwab & Co.,*
    118 Cal. App. 4th 1224 (Ct. App. 2004)..................................................................................4

*Momot v. Mastro,*
    652 F.3d 982 (9th Cir. 2011)....................................................................................................2

*O'Connell v. Lampe,*
    206 Cal. 282, 274 P. 336 (1929) .............................................................................................3

*Rader v. Thrasher,*
    57 Cal. 2d 244 (1962) ..............................................................................................................3

*Rodriguez v. Am. Techs., Inc.,*
    136 Cal. App. 4th 1110 (Ct. App. 2006)..................................................................................6

*Wagner Const. Co. v. Pac. Mech. Corp.,*
    41 Cal. 4th 19 (2007)...............................................................................................................9

*Walnut Creek Pipe Distributors, Inc. v. Gates Rubber Co. Sales Div.,*
    228 Cal. App. 2d 810, 39 Cal. Rptr. 767 (Ct. App. 1964) .......................................................5

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    **STATUTES AND RULES**

2    Federal Arbitration Act, 9 U.S.C. § 2 .................................................................... *passim*

3    California Arbitration Act , Cal. Civ. Proc. Code § 1281 ....................................... *passim*

4    Cal. Civ. Proc. Code § 1281.2.............................................................................6, 8, 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.  INTRODUCTION

In his Opposition, Plaintiff concedes that when he opened an Intuit merchant account, "Plaintiff and Intuit entered into Intuit's Merchant Agreement, which contained an arbitration clause to resolve all disputes related to Intuit's merchant services or the Merchant Agreement." *See* Dkt. No. 21 ("Opposition") at 2.  Plaintiff's opposition also does not dispute that the arbitration provision contained within the merchant agreement is enforceable, and delegates all decisions relating to the arbitrability of a dispute to the arbitrator consistent with AAA rules. *See generally* Opposition.  Rather, Plaintiff opposes Intuit's Motion on the ground that the arbitration provision no longer binds the parties, and that Intuit's motion should be decided under the California Arbitration Act, which Plaintiff contends does not favor arbitration here.  The governing case law and the terms of the parties' agreement squarely refute both arguments.

First, Plaintiff's suggestion that the arbitration clause no longer binds the parties cannot be reconciled with the terms of the parties' contract, which expressly states that the arbitration provision will survive the termination of the contract and the merchant account.  While Plaintiff suggests that the arbitration provision is not supported by adequate consideration because he no longer uses Intuit's services, contract law requires that the adequacy of consideration be determined at the time that a contract is formed, not the time that it is enforced.  Moreover while Plaintiff suggests that a prior settlement agreement entered by the parties somehow terminated the Merchant Agreement, he also concedes that that settlement "contained no language regarding the termination of the Merchant Agreement."  Opposition at 4.  To construe the prior settlement as terminating the arbitration provision would require fundamentally rewriting both the Merchant Agreement and the subsequent settlement agreement, where Plaintiff has provided no basis to do either.

Nor can Plaintiff avoid his obligation to arbitrate by relying on the California law, rather than the Federal Arbitration Act.  First, there is no question that the Federal Arbitration Act governs, as the Merchant Agreement unequivocally states that it is governed by the Federal Arbitration Act, and relates to services that affect interstate commerce.  Plaintiff's suggestion that the Federal Arbitration Act is inapplicable because both parties reside in California cannot

be reconciled with a significant body of case law applying the Federal Act to disputes between residents of the same state where the underlying transaction impacts commerce. Second, even if the California Arbitration Act were to govern, that Act would also favor arbitration of Plaintiff's claims here.

Because Plaintiff concedes that he entered the arbitration agreement and provides no valid reason why it should not be enforced, the Court should grant Intuit's motion.

## II.    ARGUMENT

### A.    The Arbitration Provision Remains Binding and Enforceable.

Plaintiff sets forth three alternative theories for why the arbitration provision is no longer enforceable: (1) that the agreement "ceased to exist" following the termination of his merchant accounts, (2) that the agreement lacks consideration now that his accounts are closed, and (3) that the agreement was implicitly terminated by a subsequent settlement agreement. Opposition at 2-4. Each of these theories fails.

#### 1.    By its Terms, the Arbitration Provision Survived the Termination of Plaintiff's Merchant Account.

Agreements to arbitrate, like other contracts, must be enforced according to their terms. *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) ("Because arbitration is fundamentally a matter of contract, the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.") (internal punctuation omitted); *see also Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 157 (9th Cir. 1993) ("Unambiguous contracts must be enforced according to their terms.") In arguing that the arbitration agreement "ceased to exist" when his merchant accounts were closed on May 26, 2015, Plaintiff ignores the unambiguous terms of the contract. The arbitration provision in the 2013 Merchant Agreement expressly provides that "[t]his Section 14 shall survive the expiration, termination, or recession [sic] of this Agreement." Gebbia Decl., Ex. D at ¶ 14. The agreement further states that "Sections 2.2, 3 through 15 will survive and remain in effect even if the agreement is terminated." *Id*. at ¶ 11. Therefore the agreement states twice that the arbitration provision will survive the termination of the Merchant Agreement. Plaintiff offers no authority for the proposition that

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    these terms are unenforceable. Nor could he, as courts in this district have instead concluded the

2    opposite, holding that an arbitration provision can survive the termination of a contract. *Jones v.*

3    *Deja Vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005) (noting that "a party's contractual

4    duty to arbitrate disputes may survive termination of the agreement giving rise to that duty.").

5    Because the parties' agreement plainly provides that the arbitration provision will survive

6    termination of the agreement of merchant accounts, Plaintiff's contention that the arbitration

7    provision terminated when his accounts were closed should be rejected as contrary to the

8    contract's terms.

9              **2.        The Arbitration Provision is Supported by Adequate Consideration.**

10            Plaintiff next contends that because he closed his merchant accounts, "the consideration of

11   the Merchant Agreement was eliminated and rendered the Merchant Agreement, including the

12   incorporated arbitration clause, void as of May 26, 2015."  Opposition at 3.  This contention

13   cannot be reconciled with the longstanding principle that the adequacy of consideration is to be

14   judged at the time a contract is formed, not at the time that it is enforced. *See O'Connell v.*

15   *Lampe*, 206 Cal. 282, 285, 274 P. 336, 337 (1929) ("The accepted rule in this state is that the

16   question of the inadequacy of the consideration relates to the time of the formation of the

17   contract, that is, the time the contract was made."); *Rader v. Thrasher*, 57 Cal. 2d 244, 252 (1962)

18   (noting that "adequacy of consideration is to be determined as of the time the contract was

19   entered into").  Thus events subsequent to contract formation that impact the value of the

20   consideration have no impact on the question of whether the parties formed an enforceable

21   contract. *Andersen v. Charles*, 52 Cal. App. 290, 293 (Ct. App. 1921) (declining to consider

22   increase in value of property since time of contract formation in determining if consideration was

23   adequate).  Here, Plaintiff does not contend that consideration was lacking at the time the contract

24   was formed. *See* Opposition at 2-3.  Rather, he implicitly acknowledges that when he received an

25   account to access Intuit's merchant services platform, this constituted adequate consideration for

26   the Merchant Agreement to be enforceable. *Id*. at 3.  ("Plaintiff does not object that Plaintiff was

27   bound by the Merchant Agreement when the accounts in question were open.")  Because Plaintiff

28   is incorrect as a matter of law that his subsequent termination of his accounts renders

FENWICK & WEST LLP
ATTORNEYS AT LAW

1   consideration inadequate, the Merchant Agreement (and its arbitration provision) remain

2   enforceable.

3           While Plaintiff contends that the case of *Lopez v. Charles Schwab & Co.* supports his

4   position, that case addressed the question of whether there had ever been an offer and acceptance

5   of a contract, not the adequacy of consideration. *See* Opposition at 3. In *Lopez* the plaintiff

6   applied for a particular type of Charles Schwab account, but Charles Schwab rejected her

7   application. *Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1228 (Ct. App. 2004).

8   After rejecting her application and declining to create the account that the plaintiff requested,

9   Charles Schwab—acting without the plaintiff's knowledge—opened a different type of account

10  under the plaintiff's name and transferred assets from another financial institution to that account.

11  *Id.* at 1228. On those facts, the court concluded that the parties had never entered any contract at

12  all: Schwab had rejected plaintiff's offer to contract for the type of account that she requested,

13  and the plaintiff had never accepted a counter-offer to open a different type of account. *Id*. at

14  1233 ("Thus, we conclude the parties did not enter into a contractual relationship."). Because the

15  parties never agreed to any contract at all, the plaintiff was not bound by the arbitration provision

16  upon which Charles Schwab relied.

17          Here, by contrast, Plaintiff acknowledges that he and Intuit entered into a valid contract

18  containing the arbitration at the time he opened his merchant accounts. *See* Opposition at 2

19  ("Plaintiff does not dispute that by opening the relevant accounts, Plaintiff and Intuit had entered

20  into Intuit's Merchant Agreement."). Because Plaintiff concedes that he entered into the

21  Merchant Agreement, and because the subsequent termination of Plaintiff's merchant account

22  does not impact the validity of that agreement, Plaintiff remains bound to arbitrate this dispute.

23                      **3.      The Parties' Settlement Agreement Did Not Terminate the Agreement
                                 to Arbitrate.**
24
            Plaintiff next contends that the Merchant Agreement was implicitly terminated by a
25
    settlement agreement that the parties entered in 2015. This argument fails for several reasons.
26
    First, Plaintiff submitted the entire settlement agreement to the Court, and this agreement does not
27
    contemplate termination of the Merchant Agreement. *See* Dkt. No. 21-1. Even Plaintiff
28

acknowledges that the settlement agreement "contained no language regarding the termination of the Merchant Agreement." Opposition at 4. Thus, Plaintiff's argument is that the termination of the Merchant Agreement is an "implied term" of the settlement. But the very authority upon which Plaintiff relies compels the opposite conclusion, noting that "implied covenants are not favored in the law," and that "[t]he law refuses to read into contracts anything by way of implication except upon grounds of obvious necessity." *Walnut Creek Pipe Distributors, Inc. v. Gates Rubber Co. Sales Div.*, 228 Cal. App. 2d 810, 815, 39 Cal. Rptr. 767 (Ct. App. 1964). Here, there is no "obvious necessity" requiring an implied covenant to terminate the Merchant Agreement. To the contrary, the parties executed a settlement agreement setting forth the exact terms under which Plaintiff would terminate his merchant accounts, and no mention was made of terminating the Merchant Agreement. To read such a term into the agreement after the fact would require the Court to rewrite the parties' contract.

Moreover, even if the Merchant Agreement somehow were terminated by the settlement agreement—which it was not—this still would not render the arbitration provision unenforceable, because, as described above, that provision expressly survives the termination of the Merchant Agreement. *See* Gebbia Decl., Ex. D at ¶¶ 11, 14. Thus there is no basis to conclude that the settlement agreement terminated the arbitration provision specifically.

In sum, Plaintiff concedes that he entered an arbitration provision that expressly survived the termination of the underlying accounts and contract. The parties did *not*, as Plaintiff asserts, agree to terminate the Merchant Agreement or to abrogate the arbitration provision, which survives the termination of the Merchant Agreement in any event. As a result, the arbitration provision should be enforced according to its terms, and Plaintiff's claims should be compelled to arbitration.

**B.     Arbitration is Required Under Both State and Federal Law.**

Plaintiff alternatively contends that the Court should not compel arbitration because the California Arbitration Act, rather than the Federal Arbitration Act, governs this case and would not favor arbitration. The Court should reject Plaintiff's argument, both because the Federal

1    Arbitration Act applies and because the California Arbitration Act, were it applicable, also would

2    require Plaintiff to arbitrate his claims.

### 1. The Parties Agreed that The Federal Arbitration Act Would Govern Application of the Arbitration Provision.

Because agreements to arbitrate are simply contracts between the parties, the parties may

agree that the Federal Arbitration Act will govern the arbitration provision, even where the

California Arbitration Act would otherwise apply.  *See Gloster v. Sonic Auto., Inc.*, 226 Cal. App.

4th 438, 446 (Ct. App. 2014) (reversing order denying motion to compel arbitration and holding

that trial court erred by applying California Arbitration Act where arbitration provision specified

that Federal Arbitration Act would govern); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th

1110, 1122 (Ct. App. 2006) (same).  Here, the arbitration provision provides that "[t]he Federal

Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall

apply California law to all *other* matters."  *See* Gebbia Decl. Ex. D ¶ 14; Ex. E ¶ 46 (emphasis

added).  This language makes clear that the Federal Arbitration Act, and not the California

Arbitration Act, governs enforcement of the arbitration provision.  Where the parties have

specified that the Federal Arbitration Act governs, the Court may not deny a motion to compel

arbitration based on exceptions found in only in the California Arbitration Act.  *Gloster*, 226 Cal.

App. 4th at 446. ("Because the Federal Arbitration Act contains no provision analogous to

[California Arbitration Act] section 1281.2, subdivision (c), that subdivision cannot be applied to

deny the enforcement of arbitration clauses governed by the FAA.") (internal citations omitted).

Because Plaintiff agreed that the arbitration provision would be governed by the Federal

Arbitration Act, he cannot now seek to avoid arbitration through reliance on contrary terms found

only in the California Arbitration Act.

### 2. The Federal Arbitration Act Also Governs this Dispute Because the Contract at Issue Involves Commerce.

The Federal Arbitration Act, by its terms, applies to any "contract evidencing a transaction

*involving commerce*."  9 U.S.C. § 2 (emphasis added).  The Supreme Court has noted that the

phrase "involving commerce" is "broader than the often-found words of art 'in commerce,'" and

therefore "covers more than only persons or activities within the flow of interstate commerce."

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995) (internal citation omitted). Indeed, the Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Under this familiar standard, an activity is said to affect commerce "without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice ... subject to federal control." *Id.* at 56-57 (internal punctuation omitted). Thus in considering whether the Federal Arbitration Act applies, the proper inquiry for this Court is not whether Intuit's agreement with Mr. Kung specifically affects interstate commerce, but whether Intuit's provision of credit card processing services and related agreements with merchants *in the aggregate* affects interstate commerce. *See Golden v. Dameron Hosp. Ass'n*, No. CIV. S-12-0751 LKK/EFB, 2012 WL 4208779, at *4 (E.D. Cal. Sept. 19, 2012) (describing factors to be considered and applying Federal Arbitration Act to contract between hospital and employee of same state because hospital's activities, in the aggregate, affected interstate commerce).

Viewed through this lens, there can be no question that the Federal Arbitration Act is applicable. First, even if the Court were to consider only Mr. Kung's agreement, this agreement standing alone affects interstate commerce. As is made clear in the Merchant Agreement, Mr. Kung's merchant account enabled him to process credit card transactions from his customers. *See* Gebbia Decl. Ex. D ¶ 1 ("Intuit serves as a third party payment processor to merchants to enable payments between merchants and their customers."). To facilitate such payments, the Agreement required Plaintiff to designate one bank account into which funds from customer payments could be deposited, and from which any improper payments could be withdrawn. Gebbia Decl. Ex. E, ¶ 10 ("You will need to establish and maintain a checking account ('Bank Account') at a U.S. financial institution of your choice to facilitate payment of fees to Intuit and the transfer of amounts due to you from your Merchant Account."). For both of his merchant accounts Plaintiff designated his bank account at JP Morgan Chase in Tampa, Florida, as the bank into which Intuit should deposit all funds. *See* Gebbia Decl. Ex. A at 3, Ex. B at 3. Accordingly,

FENWICK & WEST LLP
ATTORNEYS AT LAW

Mr. Kung's use of this merchant account to process payments in California resulted in funds being credited or debited by Intuit into a bank account in Florida. This affects interstate commerce before even considering the role that credit card brands, card issuing banks, and other out-of-state entities play in each and every credit card transaction.

The impact on interstate commerce is even more obvious in relation to the aggregate impact of Intuit's payment services platform, beyond just Mr. Kung's individual use. The merchant services platform is available to businesses in all fifty states and Puerto Rico. Gebbia Decl., Ex. E ¶ 2. All merchants using the platform are required to designate a bank account for use with their merchant account (as Mr. Kung did), and the financial institution at which they designate such an account can also be located in any U.S. state. *Id*. ¶ 10. The platform can be used to process payments from a variety of different credit card companies, such as Visa, Mastercard, and American Express. *Id*. ¶ 29. The aggregate impact of merchants in various states processing payments through a variety of credit card companies to and from banks also in many different states plainly affects interstate commerce. As such, the Federal Arbitration Act applies, and requires the arbitration of Plaintiff's claim.

### 3. In All Events, The California Arbitration Act Likewise Would Require Arbitration of Plaintiff's Claim.

Were the Court to find that the California Arbitration Act governs, the outcome would be the same. Like the Federal Arbitration Act, the California Arbitration Act presumes that arbitration agreements are valid and enforceable. *See* C.C.P. § 1281 ("A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."). Like the Federal Arbitration Act, the California Act requires that "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists," save for a few very limited circumstances. *Id*. § 1281.2. The California Supreme Court has noted that the Act, like the Federal Arbitration Act "reflects a strong public policy in favor of arbitration" and that "[w]hen the parties to an arbitrable controversy have agreed in writing to arbitrate it and one has refused, the court, under section

1  1281.2, must ordinarily grant a petition to compel arbitration." *Wagner Const. Co. v. Pac. Mech.*

2  *Corp.*, 41 Cal. 4th 19, 25–26 (2007).

3        Plaintiff suggests that the outcome would be different under the California Arbitration Act

4  because it, unlike the Federal Arbitration Act, "disfavors arbitration" whenever "a third party is

5  involved." Opposition at 5-6 (citing C.C.P. 1281.2 (c)). This is incorrect. The California

6  Arbitration Act does provide the court with discretion to deny a motion to compel arbitration if a

7  closely-related action is pending against a non-signatory third party, and the related action creates

8  "a possibility of conflicting rulings on a common issue of law or fact." *See* Cal. Civ. Proc. Code

9  § 1281.2 (c). Such discretion must be exercised, however, against the "strong public policy in

10 favor of arbitration" embodied by the California Arbitration Act. *Wagner*, 41 Cal. 4th at 25-26.

11 To that end, while a court has discretion to decline to enforce the arbitration agreement when

12 1281.2 (c) applies, it also has discretion to "order arbitration among the parties who have agreed

13 to arbitration and stay the pending court action or special proceeding pending the outcome of the

14 arbitration proceeding." Cal. Civ. Proc. Code § 1281.2 (c). Indeed courts are likely to deny

15 arbitration altogether only in instances where the dispute between the parties to the arbitration

16 provision is a small subset of a much larger action that will remain pending without those parties,

17 and which could result in a conflicting ruling. *See, e.g, C. V. Starr & Co. v. Boston Reinsurance*

18 *Corp.*, 190 Cal. App. 3d 1637 (Ct. App. 1987) (affirming denial of motion to compel arbitration

19 where dispute involved plaintiff and eleven insurers, only one of which had arbitration

20 agreement). Here Plaintiff provides no reason that the arbitration provision should not be

21 enforced and his continuing litigation against Experian stayed.

22       In sum, there can be no reasonable dispute that the Federal Arbitration Act governs the

23 dispute here: the parties expressly agreed that the Federal Arbitration Act would govern, and

24 Intuit's payment processing platform—including Mr. Kung's use of it—affect interstate

25 commerce. Even if the California Arbitration Act were to govern, however, Plaintiff should still

26 be compelled to arbitrate his claim against Intuit.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# III. CONCLUSION

For the reasons stated herein and in Intuit's opening motion, Intuit respectfully requests that the Court grant its motion to compel arbitration and stay proceedings pending the resolution of Mr. Kung's claims in arbitration.

Dated:    April 5, 2018                    FENWICK & WEST LLP


By:  _/s/ /Annasara G. Purcell_
        Rodger R. Cole (CSB No. 178865)
        Annasara G. Purcell (CSB No. 295512)
        FENWICK & WEST LLP

        Attorneys for Defendant, Intuit Inc.

FENWICK & WEST LLP
ATTORNEYS AT LAW