IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KIN WAH KUNG,

    Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.; and INTUIT INC.,

    Defendants.

No. C 18-00452 WHA

**ORDER GRANTING DEFENDANT INTUIT INC.'S MOTION TO COMPEL ARBITRATION**

## INTRODUCTION

In this *pro se* contract dispute action, defendant Intuit moves to compel arbitration. For the reasons stated below, defendant's motion is **GRANTED**.

## STATEMENT

Defendant Intuit Inc. offers various financial services such as the well-known tax preparation software TurboTax. At issue in this action is Intuit's payment processing service known as QuickBooks (Dkt. No. 1 at ¶ 9). This platform enables businesses to access card association networks to process credit card payments from their customers. In order to use QuickBooks, merchants must apply and establish an Intuit merchant account. Merchants must also accept Intuit's terms and conditions, also known as the merchant agreement, before they can use QuickBooks (Dkt. No. 15).

*Pro se* plaintiff Kin Wah Kung entered into two merchant agreements with Intuit. The first was entered into in June 2013 for a sole proprietorship with the legal business name

"Kin Wah Kung," and the second in October 2013 for a partnership with the business name "Fix-it-All Home Computing Solutions" (Dkt. Nos. 15-2, 15-3). Intuit's online application in 2013 presented applicants — including plaintiff — with language directly next to the "sign up" button that read "By continuing, I agree to the *Terms and Conditions*, including the *IPS Electronic Communications Policy*." Clicking on the underlined words would take applicants to a page whereby they could examine the merchant agreement (Dkt. No. 15-3).

Section 14 of the agreement (the arbitration clause) provided that (Dkt. No. 15-5):[1]

> ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters.

Section 14 also provided that "[a]rbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules." It also stated that "[t]his Section 14 shall survive expiration, termination or recession [sic] of this Agreement" (*id.* at 4).

Section 7 authorized Intuit to obtain both personal and business credit reports in accordance with the Fair Credit Reporting Act ("FCRA") (*id.* at 6).

After using QuickBooks for several years, plaintiff filed a small claims action that alleged Intuit had violated California's unfair competition law. Subsequently, in May 2015, plaintiff and Intuit entered into a settlement agreement whereby plaintiff agreed to terminate both of his merchant accounts with Intuit. Accordingly, plaintiff closed both his accounts on May 26, 2015. The settlement agreement referred to the termination of plaintiff's merchant accounts, but did not discuss the merchant agreements (Dkt. No. 21-1).

In April 2016, plaintiff obtained his annual disclosure from defendant Experian Information Solutions, Inc., which showed that Experian had furnished plaintiff's credit report to Intuit on January 26, 2016. Plaintiff alleges that Intuit had no permissible purpose in requesting

---

[1] Intuit claims that Exhibit D (Dkt. No. 15-5) is the merchant agreement that was in place in both June and October of 2013, when plaintiff submitted his applications. Plaintiff does not dispute Intuit's claim.

his credit report from Experian as he had closed his accounts with Intuit and no longer engaged in business with Intuit in any capacity.

On the basis of this alleged unauthorized credit inquiry, plaintiff brought this action against both Intuit and Experian, claiming that defendants violated Section 1681 of the FCRA (Dkt. No. 1). Section 1681 restricts who can access a person's credit information and how that information can be used. *See* 15 U.S.C. § 1681. Intuit now moves to compel arbitration and stay proceedings pending the completion of arbitration (Dkt. No. 15).

This order follows full briefing and oral argument. At oral argument, Kin Wah Kung represented himself as capably as any *pro se* plaintiff against Intuit's counsel. On balance, however, the win must go to Intuit's counsel.

**ANALYSIS**

**1. FAA GOVERNS THE ENFORCEABILITY OF THE ARBITRATION CLAUSE.**

A threshold issue is whether or not the Federal Arbitration Act ("FAA") governs the enforceability of the arbitration provisions within the merchant agreements. The FAA broadly applies to any "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction" 9 U.S.C. § 2.

Although the agreement's arbitration clause provides that "[t]he Federal Arbitration Act governs the interpretation and enforcement of this provision," plaintiff argues that the FAA is inapplicable here because his contract with Intuit did not "involve commerce" and is thus outside the purview of the FAA. Accordingly, he argues that the California Arbitration Act ("CAA") should govern arbitrability. This order, therefore, first addresses whether Intuit's merchant agreements are contracts "involving commerce" within the meaning of the FAA. *See* 9 U.S.C. § 2.

The Supreme Court has interpreted the term "involving commerce" in the FAA "as the functional equivalent of the more familiar term 'affecting commerce' — words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (*per curiam*). The Supreme Court has

3

thereby described the FAA's reach expansively as coinciding with that of the Commerce Clause and made it "perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' — that is, 'within the flow of interstate commerce.'" *Ibid.* (quoting *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995)). Accordingly, *Citizens Bank* held that even if the particular economic transactions in which the parties have engaged are not in interstate commerce, the FAA applies "if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control. Only that general practice need bear on interstate commerce in a substantial way." 539 U.S. at 56–57.

Intuit argues that its payment processing service QuickBooks — the subject of the merchant agreements — has a sufficient nexus with interstate commerce not only as it pertains to plaintiff's individual use, but also in the aggregate as a general practice. This order agrees.

In order to use QuickBooks, plaintiff, a California resident, designated his bank account at JP Morgan Chase in Tampa, Florida. Accordingly, as Intuit argues, "Mr. Kung's use of [his] merchant account to process payments in California resulted in funds being credited and debited by Intuit into a bank account in Florida" (Dkt. No. 24 at 12). Plaintiff's use of QuickBooks, therefore, affects interstate commerce in and of itself.

Plaintiff makes two arguments to support his view that his agreements with Intuit did not involve commerce. Neither is persuasive. *First*, he argues that both he and Intuit are domiciled in California. This argument, however, ignores the interstate nature of Intuit's service. Indeed, every time plaintiff would swipe a customer's credit card, presumably in California, funds were traveling within the flow of commerce and into his bank account in Tampa, Florida.

*Second*, plaintiff argues that Intuit has taken deliberate action to avoid classifying its services as "commerce." He points to the choice-of-law provision in Intuit's 2015 merchant agreement that was in place when plaintiff closed his accounts. That provision states that a merchant's "entry into and performance of this agreement will deemed to be 'transaction of business' within the State of California" (Dkt. No. 15-6 at 18). Notwithstanding that the 2015 merchant agreement is not at issue here — the 2013 agreements are — plaintiff's argument

4

seems to be that the designation of California law in the choice-of-law provision requires the application of the CAA instead of the FAA. Not so.

The arbitration clauses in both the 2013 and 2015 merchant agreements expressly provided that "[t]he Federal Arbitration Act governs the interpretation of the enforcement of this provision; the arbitrator shall apply California law to all other matters" (Dkt. Nos. 15-5, 15-6). Thus, reading the choice-of-law and arbitration provisions together shows that the designation of California law in the choice-of-law provision was intended to govern all matters, except for arbitrability which the parties agreed would be enforced according to the FAA.

Because Intuit's merchant agreement is "a contract evidencing a transaction involving commerce" within the meaning of Section 2 of the FAA, the FAA governs and federal substantive law of arbitrability applies to the arbitrability determination.

### 2. LEGAL STANDARD UNDER FAA.

A district court's role under the FAA is limited to determining two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The parties may, however, include a delegation provision agreeing to arbitrate the "gateway" questions of arbitrability.

When a party seeks to enforce a purported delegation provision, before sending the parties to the arbitrator a court must decide (1) whether there is "clear and unmistakable" evidence of the contracting parties intent to arbitrate arbitrability; and (2) if a party specifically challenges the delegation provision, whether the delegation provision is valid; and if valid (3) whether the assertion of arbitrability is "wholly groundless." *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 78; 85 (2010); *see also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law).

Here, Intuit moves to compel arbitration of this action and also moves to compel arbitration of the "gateway" issues of arbitrability. For the reasons stated below, Intuit's requests to compel arbitration are **GRANTED**.

### 3. DELEGATION CLAUSE.

#### A. The Delegation is Clear and Unmistakable.

Intuit's arbitration clause — which plaintiff concedes he agreed to — provided that "[a]rbitration will be conducted by the American Arbitration Association (AAA) before a single AAA arbitrator under the AAA's rules." Rule 7(a) of the Commercial Arbitration Rules provides:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

Our court of appeals held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" based on the inclusion of the paragraph just recited. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Although *Brennan* involved a commercial contract between sophisticated parties, our court of appeals emphasized that its holding should not be interpreted "to require that contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Ibid.* In applying *Brennan*, however, district courts in our circuit — including the undersigned judge — have required a minimum level of sophistication before holding that the incorporation of the AAA rules constitutes clear and unmistakable evidence of delegation. *See e.g. Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *4 (N.D. Cal. Dec. 14, 2016).

While plaintiff lacks the sophistication of the plaintiff in *Brennan*, he is not an unwary consumer either. In fact, this action arises from two *commercial contracts* between Intuit and plaintiff's two businesses. As a business owner — two at least — plaintiff is accustomed to entering into agreements. Additionally, plaintiff has previously admitted to bringing twenty to thirty lawsuits at an oral hearing in another action before this Court. Under these circumstances, this order holds that plaintiff is a savvy business owner with sufficient sophistication to be subject to *Brennan*. Thus, his acceptance of the merchant agreements which contained an arbitration clause that incorporated the AAA rules, constituted clear and unmistakable evidence that the parties intended to delegate the issue of arbitration to the arbitrator.

6

### B. Plaintiff Failed to Challenge the Delegation Clause.

Under Section 2 of the FAA, a "written provision" to "settle by arbitration a controversy" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. A delegation provision — here the incorporation of the AAA rules — "is simply an additional, antecedent agreement" to arbitrate that a party asks a court to enforce. *Rent-A-Center*, 561 U.S. at 70. Just like any other arbitration agreement then, a delegation provision is valid under Section 2 unless it is unenforceable under "generally applicable contract defenses such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).[2]

A court must, however, treat a delegation provision as valid unless the party resisting arbitration specifically challenges the delegation provision itself — as opposed to the arbitration clause or the contract as a whole. That is because Section 2 of the FAA "states that a 'written provision' 'to settle by arbitration a controversy' is 'valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Rent-A-Center*, 561 U.S. at 70–72 (emphasis in original).

Here, plaintiff contends that he "does not dispute that by opening the relevant accounts, Plaintiff and Intuit had entered into Intuit's Merchant Agreement, which contained an arbitration clause to resolve all disputes related to Intuit's merchant services or the Merchant Agreement" (Dkt. No. 21 at 2). Plaintiff also "does not object that [he] was bound by the Merchant Agreement when the accounts in question were open, *i.e.* from the account opening to May 26, 2015" (*id.* at 3).

Rather, plaintiff dedicates the entirety of his opposition brief to arguing that the merchant agreements and their incorporated arbitration clauses are no longer enforceable. The crux of his argument is that when he closed his merchant accounts, the merchant agreements "ceased to exist." In support, he advances two theories. *First*, he argues that because the merchant

---

[2] As the Court in *Rent-A-Center* noted, the issue of "validity" of an agreement to arbitrate is different from the issue of whether or not any agreement between the parties "was ever concluded." 561 U.S. 61, n.2 (2010). Here, similar to *Rent-A-Center*, only the former is at issue. *See* Dkt. No. 21 (plaintiff concedes that he had entered into Intuit's merchant agreements and was bound by the arbitration provision while his merchant accounts remained open).

7

accounts were the consideration for the agreements, they lack consideration now that his accounts are closed. *Second*, he contends that the settlement agreement implicitly terminated the agreements.

Neither of plaintiff's arguments, however, specifically challenges the validity of the delegation provision which is the specific agreement to arbitrate that Intuit seeks to enforce. Indeed, plaintiff's opposition brief does not even discuss the delegation provision. As such, the delegation provision must be treated as valid under Section 2 of the FAA, leaving any challenge to the validity of the merchant agreements as a whole for the arbitrator. *See Rent-A-Center*, 561 U.S. at 72. In other words, because plaintiff's arguments go to the enforceability of the merchant agreements as a whole — an issue which the parties delegated to the arbitrator — they need not be considered.

### C. Intuit's Motion to Compel Arbitration Is not "Wholly Groundless."

Where, as here, the parties "clearly and unmistakably" intended to delegate arbitrability to an arbitrator, the court's inquiry is limited to whether the assertion of arbitrability is "wholly groundless." *Qualcomm*, 466 F.3d at 1371. This inquiry allows a district court to prevent "a party from asserting any claim at all, no matter how divorced from the parties' agreement, to force an arbitration." *Id.* at 1373 n.5. In conducting the "wholly groundless" inquiry:

> [T]he district court should look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration. Because any inquiry beyond a "wholly groundless" test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by . . . , the district court need not, and should not, determine whether [plaintiff's claims] are in fact arbitrable. If the assertion of arbitrability is not "wholly groundless," the district court should conclude that it is "satisfied" pursuant to section 3 [of the FAA].

*Id.* at 1374.

Here, the scope of the parties arbitration clause is broad. It encompasses "any dispute or claim relating in any way to the services or [the merchant] agreement" (Dkt. No. 15-5). Importantly, section 7 of Intuit's "ADDITIONAL TERMS AND CONDITIONS" authorized Intuit to obtain both personal and business credit reports in accordance with the FCRA (*see* Dkt. No. 15-5 at 6). Pursuant to this provision Intuit had plaintiff's consent to monitor his

8

creditworthiness. Plaintiff's claims — alleged violations of the FCRA — appear to be predicated on whether or not the closure of his merchant accounts rescinded Intuit's authorization to check his creditworthiness. Thus, this action plausibly relates to Intuit's merchant agreements. Intuit's claim that the parties dispute be arbitrated is therefore not "wholly groundless."[3]

## CONCLUSION

For the reasons stated above, Intuit's motion to compel arbitration is **GRANTED**. This action is now stayed pending completion of the arbitration, provided the parties move the arbitration along at a reasonable pace. This order applies only as between Intuit and plaintiff.[4]

**IT IS SO ORDERED.**

Dated: May 1, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff does not make any arguments about the scope of the arbitration clause. Rather, as discussed above, plaintiff opposes arbitration on the ground that the closure of his accounts terminated the merchant agreements and the arbitration clauses within them. Again, in light of the parties clear and unmistakable intent to delegate arbitrability, plaintiff's arguments are for the arbitrator to consider.

[4] Defendant Experian has not filed a motion or a brief in this action. At the hearing, plaintiff and Experian's counsel represented that they have neared entry of a settlement agreement. Accordingly, plaintiff stated he will dismiss Experian as a defendant in this action.